[No. 10204.    Department One.    August 20, 1912.]

RICHARD ANGEL, *Appellant*, v. COLUMBIA CANAL COMPANY, *Respondent.*[1]

VENDOR AND PURCHASER—RESCISSION BY VENDEE—NOTICE OF ELECTION.  The commencement of an action for cancellation of executory contracts for land is a sufficient notice of an election to rescind, as a release of the contracts could be provided for in the decree.

SAME—RIGHT TO RESCIND—WAIVER—LACK OF DILIGENCE.  One seeking rescission of a contract for fraud must act promptly upon discovering the fraud; and the right to rescind for fraudulent representations as to an abundant water supply is waived, where the purchaser knew, before he signed the contract, of a shortage in the water supply, but took and retained possession for a year before bringing suit.

[1]Reported in 125 Pac. 766.

Appeal by plaintiff from a judgment of the superior court for Walla Walla county, Brents, J., entered July 21, 1911, upon findings in favor of the defendant, in an action for rescission, denying a rescission and granting plaintiff a money judgment. Affirmed.

*W. B. Mitton*, for appellant.

*Shank & Smith* and *Pedigo & Smith*, for respondent.

Gose, J.—Suit for a rescission of two contracts for the sale of real estate. Rescission denied, and money judgment entered for the plaintiff, who has appealed.

In the month of February, 1909, the appellant, then a resident of the city of Duluth, in the state of Minnesota, was attracted by an advertisement of the lands of the respondent located at Attalia, Walla Walla county, in this state, and called upon its sales agent at that place to discuss them. As a result of the discussion, he entered into a written contract with the respondent on the 25th day of February, for the purchase of two five-acre tracts. On the 5th day of June, he made a second contract with it, for the purchase of a third five-acre tract, and on the 3d day of July he made a third contract with it for the purchase of a like tract. Thereafter he left his home in Duluth for the purpose of taking up his residence at Attalia, and arrived there about the middle of October, 1909. He then examined the tracts of land embraced in his contracts, and being dissatisfied with them, arranged with the respondent to exchange them for two five-acre tracts. This arrangement was made on the 3d day after his arrival at Attalia. He had paid $1,725 on the earlier contracts, and was credited with that sum in the new contracts. The new contracts were not executed until the 7th day of December.

At the time of making the first purchases, the appellant had been a railroad bridge builder for twenty years, and had no knowledge of irrigation. The basis of his complaint is that the respondent's sales agent at Duluth represented that

the respondent had an inexhaustible supply of water for the irrigation of its lands, and that later at Attalia its manager made a like representation, when in fact its water supply was wholly inadequate. The sales agent at Duluth, for the purpose of inducing the appellant to enter into the contract, gave him one of the respondent's illustrated circulars, which stated that it "obtained an ample and inexhaustible gravity supply of water from the Walla Walla river." The circular shows the river, dam, and canal. The appellant testified that the sales agent further said to him that he need not fear a shortage of water as the respondent had a great reservoir which contained enough water to meet all demands for from fourteen to sixteen years, and that he entered into the contracts relying upon these representations. He further testified that, a few days after he arrived at Attalia, a number of reliable people informed him that the respondent could not furnish water sufficient to produce crops; that he then told Mr. Given, the respondent's manager, that he had "learned" that it did not have water; that the manager said that the company had an abundance of water; that the tunnel had caused trouble that season, "but when they got it fixed" there would be an adequate supply of water for all purposes; that relying on his statement, he continued making improvements; that a few days later he told the manager that he wanted his money; that the latter replied that he "would not do anything for me;" that witness "counted eleven families moving away then," and that later he signed the new contracts.

The appellant and his wife both testified that they got the first water for irrigation in the season of 1910 on the 24th day of April, and intermittently thereafter until the 3d day of July, and that they had no water thereafter until in September. The appellant also testified, that the tunnel was repaired before the irrigation season opened; that the shortage of water was caused by the drying up of the waters of the Walla Walla river, the source of the defendant's canal; and that a few days after he reached Attalia, he made inquiry

about the reservoir, of "the people living there" and of the respondent's manager, and that the latter informed him that they had an abundance of water. Both the respondent's manager, Mr. Given, and its horticulturist, Mr. Wright, testified that they made no representations to the appellant about the supply of water. The respondent obtains its water supply by a gravity flow from the Walla Walla river and an auxiliary pumping plant on the Columbia river. An unprecedented drought in 1910 caused the former to go dry, and lowered the latter several feet below the intake. The appellant left the land in September or October. His wife remained there until December 4. The action was commenced on October 17. Upon the facts stated, the court denied rescission, and gave the appellant a judgment for $150 damages and costs in consequence of the respondent's failure to furnish water for the irrigation of the lands, "as provided in the contract."

The prayer of the complaint is "that said contract of purchase be delivered up to be canceled," and for damages. There was no demand for a rescission after the execution of the contracts, prior to the filing of the complaint. The commencement of the action for a cancellation of the executory contracts, if timely, was a sufficient notice of an election to rescind. The execution of a release of the contracts could have been provided for in the decree. *Colpe v. Lindblom*, 57 Wash. 106, 106 Pac. 634.

One who seeks to avoid a contract which he has been induced to enter into by the fraudulent representations of another touching the subject-matter of the contract, must proceed with reasonable promptitude upon discovering the fraud, or he will be held to have waived his right to rescind. *Skoog v. Columbia Canal Co.*, 63 Wash. 115, 114 Pac. 1034; *Stelter v. Fowler*, 62 Wash. 345, 113 Pac. 1096, 114 Pac. 879; *Owen v. Pomona Land & Water Co.*, 131 Cal. 530, 63 Pac. 850, 64 Pac. 253; *Culver v. Avery*, 161 Mich. 322, 126 N. W. 439; *Tarkington v. Purvis*, 128 Ind. 182, 25 N. E. 879, 9 L. R. A. 607, and foot note.

The appellant did not act promptly after he became aware of the actual conditions at Attalia. According to his own testimony, he knew before he signed the contracts in suit that there had been a shortage in the supply of water that season. He says he was so advised by reliable people. He says that, when he disclosed his information to the respondent's manager, the latter said that there would be an abundance of water when the tunnel was fixed. He knew that the tunnel was repaired before the commencement of the irrigation season, and he says that he had no water until the 24th day of April, and that he only had it intermittently thereafter until the 3d day of July, when the supply ceased altogether until some time in September. Despite this knowledge and the information that he must have gained from living in the neighborhood—a small community where water was the chief resource and no doubt the leading topic of conversation, he took and retained possession of the land until after the commencement of the action, set out fruit trees, and planted alfalfa, berries, and vegetables, and made other improvements. His conduct was equivalent to an election to affirm his contracts, and he is precluded, under all the authorities, from making a second election.

The judgment is affirmed.

Crow, Chadwick, Ellis, and Parker, JJ., concur.