[No. 14501. *En Banc.* January 9, 1919.]

AUGUST BIEL, *Appellant,* v. UNION FUEL & ICE
COMPANY *et al., Respondents.*[1]

FRAUD (13, 18)—PLEADING—EVIDENCE—ISSUES AND PROOF. Where
fraud was alleged inferentially as to representations concerning the
financial condition of a company, latitude should be allowed in
inquiring into the subject, although there was no direct allegation
that the financial condition was misrepresented.

APPEAL (386, 387)—RIGHT TO ALLEGE ERROR—WAIVER. Plaintiff,
having declined to amend his complaint upon the condition of a
continuance, so as to make evidence admissible, cannot allege error
in the exclusion of the evidence.

CORPORATIONS (56)—PREFERRED RIGHTS—TRANSFER—RESCISSION
FOR FRAUD. A purchaser of "preferred rights" in a corporation
affirms the sale, and cannot thereafter rescind, where, a year later,
with knowledge of the alleged fraud, he accepted interest due under
his contract.

SAME (31, 189)—PREFERRED RIGHTS—AUTHORITY TO ISSUE—ULTRA
VIRES. The issuance of certificates of "preferred rights," under the
corporation's general power to borrow money and incur indebted-
ness, is not *ultra vires.*

Appeal from a judgment of the superior court for
Adams county, Davidson, J., entered May 22, 1917,
upon findings in favor of the defendant, dismissing an
action for equitable relief, tried to the court. Af-
firmed.

*G. E. Lovell,* for appellant.

*Frederick W. Dewart, Bert Linn,* and *L. H. Brown,*
for respondents.

TOLMAN, J.—This action was brought to recover the
purchase price paid by appellant for preferred rights
issued by the Union Fuel & Ice Company, a corpora-
tion, one of the respondents, appellant alleging that
he was induced to make the purchase and part with

[1]Reported in 177 Pac. 813.

his money by false and fraudulent representations as to material facts, upon which he relied. Findings and judgment below were in favor of respondents.

Appellant alleges in his complaint, as constituting all of the representations made to induce the purchase by him, the following:

"That, leading up to the sale of the said 'preferred rights,' the said E. F. Waggoner made the following oral representations to this paintiff:

"(1) That W. J. Lansing had told him, the said Waggoner, that the Union Fuel & Ice Company was doing a better business and was a better investment than the Ritzville Trading Company.

"(2) That the German American State Bank of Ritzville was better than any bank in Ritzville, but that an investment in the Union Fuel & Ice Company was better than an investment in any bank in Ritzville.

"(3) That the interest which said Waggoner was offering for sale in the Union Fuel & Ice Company was 'preferred stock' and bore interest at the rate of eight per cent per annum.

"(4) That defendant E. F. Waggoner was endeavoring to sell $40,000 worth of 'preferred stock' in the Union Fuel & Ice Company; that the only indebtedness against said Union Fuel & Ice Company was a real estate mortgage, and the money to be derived from the sale of the said stock was to pay off a certain real estate mortgage amounting approximately to $25,000.

"(5) That one C. H. Clodius had invested $1,000 in the Union Fuel & Ice Company.

"(6) That one F. E. Robbins, who was then and there a very rich man, had invested $1,000 in 'preferred rights' of the Union Fuel & Ice Company.

"That all of said representations were false, and were known to the maker thereof to be false, and were made with the intent to cheat and defraud this plaintiff, and that if the said representations and each and

all of them had not been made, then this plaintiff would never have purchased the so-called 'preferred rights,' and would not have given defendants the sum of $5,000."

It will be observed that there is no direct allegation in the complaint that the financial condition of the Union Fuel & Ice Company was misrepresented. Assignments of error one, two, and three are based upon the refusal of the trial court to admit certain evidence relating to the financial condition of the Union Fuel & Ice Company, and certain representations said to have been made to others as to its financial affairs.

While it is true that, when fraud is charged, the court should allow the greatest latitude, especially in the examination of hostile witnesses, yet that rule does not require the court to listen to evidence wholly outside the issues and which has no bearing upon the representations which are alleged to have been fraudulently made. Still, in this case, the fraudulent representations, as alleged in the complaint, if made and if false, were, inferentially at least, made for the purpose of showing that the financial condition of the company was better than the facts warranted, in order to induce appellant to purchase, and we think inquiry should have been permitted into the subjects covered by these assignments, even though there was no direct allegation that the financial condition of the company was misrepresented. The trial court, however, upon the request of appellant, allowed an amendment of the complaint so as to make such evidence admissible, conditioned (because of respondents' claim of surprise) upon a continuance of the cause at the expense of the appellant, which condition was within the discretion of the court; and, appellant

having refused to amend upon that condition, and having elected to submit his case upon the evidence already admitted and before the court, cannot now complain of the refusal to receive the evidence referred to.

We think there was another reason why all of such evidence, if admitted, could not be permitted to change the result. While it is true that appellant was an old man some 76 years of age, it does not appear that his faculties, other than his hearing, were to any extent impaired, and it does appear that, after full knowledge of all of the conditions, the appellant, by his own act, affirmed the sale. The undisputed testimony shows that, more than a year after the sale, the appellant, with as full knowledge of conditions as he had at the time of the trial, demanded the dividends upon the preferred rights in question, which we think showed an election to affirm the sale and retain the preferred rights as his own, because upon no other theory would he be entitled to the dividends. And even after the complaint in this action was prepared and served, but not yet filed, appellant's attorney wrote to the respondent's attorney, saying:

"I don't know whether it will have any effect, but whether this matter comes on to be heard or not, I will file all papers in court next week, and will tell the Ritzville correspondent of the Spokesman-Review to notify his paper of the filing, unless this year's interest is forthcoming. If this year's interest is paid to my clients, of course, I would be willing to wait till the end of the fall before proceeding further, in order to give your company a chance to get in some other sucker to take their place."

Here was an open and avowed attempt to induce the company to pay the interest on the preferred rights, which, as we have said, could only be received by appellant as the owner of such rights, and shows

an election to retain the rights and receive the income thereon at a time when he must have known all of the facts upon which he relies in this cause. Under the rule long followed by this court, appellant has affirmed the sale. *Thomas v. McCue,* 19 Wash. 287, 53 Pac. 161; *Eldridge v. Young America etc. Min. Co.,* 27 Wash. 297, 67 Pac. 703; *Angel v. Columbia Canal Co.,* 69 Wash. 550, 125 Pac. 766; *Pearson v. Gullans,* 81 Wash. 57, 142 Pac. 456; *Blake v. Merritt,* 101 Wash. 56, 171 Pac. 1013.

The other and final assignment of error is: "The court erred in entering up the final judgment and decree dismissing the case." Under this assignment it is argued that the issuance of the preferred rights by the Union Fuel & Ice Company was *ultra vires,* and that those rights are void and of no effect. There is an allegation in the complaint to this effect, but appellant seems to have overlooked this point entirely in the trial below, and when assigning errors and preparing his brief, and only raises it here under the guise of additional authorities. This identical question was presented to this court in *Johnston v. Spokane & Inland Empire R. Co.,* 104 Wash. 562, 569, 177 Pac. 819; and while the decision in that case is based upon laches, yet the court does say:

"This instrument, while it was neither capital stock nor an incumbrance upon the property, was undoubtedly an instrument acknowledging indebtedness and agreeing to pay dividends and interest for the money received and a considerable bonus in addition thereto."

No reason is now perceived why respondent might not issue these preferred rights under its general power to borrow money and incur indebtedness in carrying out its corporate purposes, and as appellant pur-

chased knowing just what he was purchasing, he should not now be permitted to complain.

Judgment affirmed.

All concur.