[No. 17660. Department Two. April 16, 1923.]

MINNIE CONNELL et al., Appellants, v. O. H. McGILL et al., Respondents.[1]

VENDOR AND PURCHASER (60, 61)—CONTRACT—RESCISSION BY PURCHASER—FRAUD—EVIDENCE—SUFFICIENCY. A purchaser of lots is entitled to rescind where he relied upon representations that they faced upon a public street, when in fact there was no means of ingress; and it is immaterial that an investigation might have disclosed the truth.

SAME (69)—RESCISSION BY VENDEE—TIME FOR, AND LACHES. A delay from March, 1920, until April, 1921, will not defeat a purchaser's action to rescind a purchase of lots, falsely represented to abut upon a street, where reliance was placed upon the vendors' promise to clear up the difficulty and the delay was solely to give them opportunity to do so.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered April 21, 1922, dismissing an action for rescission, tried to the court. Reversed.

*Guie & Halverstadt,* for appellants.

*Lane & Thompson,* for respondents.

[1] Reported in 214 Pac. 1.

FULLERTON, J.—The appellants, Connell, brought this action against the respondents to rescind a contract for the purchase of real property and to recover amounts paid on the purchase price and in improving the land. The grounds of the action were false and fraudulent representations made by respondent O. H. McGill and his agents at the time the contract was entered into. Upon the closing of appellant's case, the court below granted a motion to dismiss upon the ground that sufficient facts had not been proved to entitle appellants to the relief sought. From a judgment entered on the order, this appeal is prosecuted.

The property in question was described by metes and bounds in the contract, and was described also as Tracts sixty-one, sixty-two and sixty-eight of "Overlook Addition to Seattle." The plat of this addition had not been recorded. The false representation upon which appellants base their prayer for relief is that the plat showed the lots to be facing upon a 60-foot street, known as Lancaster Lane, whereas in fact there is no such street.

The testimony of both appellants is practically the same. They testified that, after Mrs Connell had spoken to Mrs. McGill concerning their desire to purchase the property, Mr. McGill came to see them about the deal and the three of them walked over the tracts, examined the surveyor's stakes, and compared the numbers on the stakes with a copy of the plat. They both testified that at that time Mr. McGill assured them that Lancaster Lane was a public street, and further assured them that a house that encroached upon it had been condemned by the city, because of its location on a public street, and would be removed. They also testified that the first knowledge they had that the strip of land was not a public street was when

it was fenced up by the owner. At that time, or soon thereafter, they were served with the complaint in an action to enjoin them from cutting or otherwise interfering with the fence.

The contract was entered into in March, 1920, and this fence was erected in the late summer or fall of that year, the verification of the complaint in the injunction suit being signed on October 30th. About the time the injunction suit was started, appellants testify, they informed Mr. McGill of the trouble and he lead them to believe that the trouble concerning the street would be cleared up and its public character established. Relying upon this promise, they continued to pay on the contract until January, 1921, when they refused to pay more until the question of the street was settled. Nothing further was done, and, on August 23, 1921, they notified respondents of their election to rescind the contract.

It is undisputed that this street or lane shown on the plat was the only means of ingress to the property, and that, after its fencing, appellants were forced to climb over it or cut it, until the agent of the owner erected a gate and permitted its use by them, with the express understanding that it was not to be considered as a public street.

From a careful reading of all the evidence, we are of the opinion that appellants fully met the burden the law places upon them, and that the showing made was at least sufficient to put respondents on their proof, and, if not disproved or explained, to entitle them to the relief sought.

In *Bradford v. Adams*, 73 Wash. 17, 131 Pac. 449, a recission was allowed where the vendor had pointed out boundary lines incorrectly, the court saying:

"From numerous decisions of this court, it has become the settled doctrine that the vendor, when he un-

dertakes to point out lands or boundaries to a purchaser, must do so correctly. He has no right to make a mistake except under penalty of having the contract rescinded or responding in damages.''

This court considered a very similar situation in *Kuehl v. Scott,* 66 Wash. 318, 119 Pac. 742, where the principal false representation involved was that the property sold fronted on a twenty-five foot street, when in fact it was only fifteen feet in width. In affirming a judgment of rescission, we said:

''The evidence shows that there is no outlet from the land other than over 70th street; hence, the width of that street materially affects the value and desirability of the land. This is particularly true when the width of that street is reduced to the very narrow width of 15 feet. At the time of the making of the contract, the street was not improved so as to in any manner indicate its width, and respondents had then no means of readily ascertaining its true width, and had no reason to doubt the representations made to them by appellants. The evidence is not entirely free from conflict touching the nature of the representations as to the width of the street, but a careful review of the entire evidence convinces us that it preponderates in favor of respondents' contentions. We are of the opinion that these facts sustain respondents' claim of rescission of the contract, under our former holdings. *Best v. Offield,* 59 Wash. 466, 110 Pac. 17, 30 L. A. R. (N. S.) 55.''

See, also: *Lawson v. Vernon,* 38 Wash. 422, 80 Pac. 559, 107 Am. St. 880; *Sears v. Stinson,* 3 Wash. 615, 29 Pac. 205.

Respondents' position is, however, that appellants were fully aware of all the conditions of the land; that they knew the plat was unrecorded; that they had lived on an adjoining tract for some months; and that the fact that the description in the contract was by metes

and bounds was sufficient to put them on their guard. This argument overlooks the fact that both appellants testified directly that they relied upon the representations of respondent McGill and thought the strip of land to be a public street up to the time it was fenced off.    There is nothing in the record as it now stands to justify an utter disregard of this testimony.

It is true that this court has repeatedly held that false representations by a vendor are not a basis for rescission if the means of knowledge were as open to the vendee as the vendor, yet we cannot think the rule has application to the case at bar.    It may be true that, upon investigation, appellants could have learned of the falsity of the representations prior to the execution of the contract, but the answer to that argument is found in *Lawson v. Vernon, supra,* where we said:

"Because they chose to rely on the representations of the appellants, the appellants cannot be heard to assert, as a means of escaping liability for making such representations, that the respondents should have gone to some one less reckless in their statements."

It is next contended that appellants are not entitled to relief because of their failure to act promptly when they first learned of the falsity of the vendor's representations, citing: *Pearson v. Gullans,* 81 Wash. 57, 142 Pac. 456; *Thomas v. McCue,* 19 Wash. 287, 53 Pac. 161; *Wetternach v. Jones-Thompson Inv. Co.,* 77 Wash. 144, 137 Pac. 442; *Wilson v. Fay,* 119 Wash. 88, 204 Pac. 800; *Angel v. Columbia Canal Co.,* 69 Wash. 550, 125 Pac. 766.

These cases are clearly distinguishable.    In *Thomas v. McCue, supra,* several years elapsed before the action was commenced and it would have been impossible to place the parties in the same position as they had been when the contract was entered into.

In *Angel v. Columbia Canal Co., supra,* rescission was sought of a contract to purchase farm lands because of false representations as to water supply. The court found that the vendee knew of the conditions before he signed the contract, and held that his accepting the contract and use of the land for a year prior to the election to rescind was equivalent to an election to affirm the contract.

In *Pearson v. Gullans, supra,* the vendees had ample opportunity to learn of all the facts upon which they based their action to rescind, and, after learning these facts, treated the land as their own and attempted to sell it.

In *Wetternach v. Jones-Thompson Inv. Co., supra,* the original situation was very similar to the one here, but prior to the election to rescind, the vendor had secured title to the street and dedicated it to the public.

We cannot say in this case that the appellants failed to act promptly, and that is' all that is necessary in a case of this kind. *Freeman v. Gloyd,* 43 Wash. 607, 86 Pac. 1051.

From the record it would seem that they acted with eminent fairness toward the respondents, and that they delayed bringing an action solely to give the respondents an opportunity to clear up the difficulty. To hold that this has estopped them from electing to rescind is to penalize them for meritorious conduct.

It follows that the court below erred in granting the motion to dismiss, hence the judgment is reversed and the cause remanded with instructions to grant a new trial.

Main, C. J., Parker, and Tolman, JJ., concur.